UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| LOUISE GALBREATH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 00-BU-3157-M |
| ) | |
| INTERTEC PUBLISHING and ) | |
| STITCHES MAGAZINE, ) | ENTERED |
| ) | SEP 25 2001 |
| Defendants. ) | |

## Memorandum Opinion

In the above-styled action filed November 6, 2000, Plaintiff Louise Galbreath, pro se, brings claims alleging that Defendants Intertec Publishing and Stitches Magazine are liable for copyright and trademark infringement under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., and the Lanham Trade-Mark Act, as amended, 15 U.S.C.A. § 1051 et seq., respectively. Now pending before the Court are cross motions for summary judgment. Plaintiff filed her submission (Doc. 27), which the Court treats as a motion for summary judgment,[1] on July 25, 2001. Defendants

---

[1] Plaintiff filed her initial motion for summary judgment on June 1, 2001. See Doc. 20. On June 8, 2001, the Court, acting sua sponte, struck Plaintiff's summary judgment filing because it wholly failed to conform with Appendix A, which governs the formatting of summary judgment briefs, as required by the Court's scheduling order. Doc. 22. However, the Court expressly permitted Plaintiff to refile a submission that conforms with Appendix A. On June 20, 2001, Plaintiff filed a summary judgment motion and a supporting brief, Doc's 23 & 24, but on June 28, 2001, the Court struck her motion and her brief because the latter still did not conform with Appendix A. Doc. 26. The Court again stated, though, that Plaintiff might file another

filed their summary judgment motion (Doc. 28) on July 30, 2001. The parties have also submitted evidence and briefs in support of their respective positions on the cross motions, which are now ripe for decision. Upon consideration, the Court concludes that Plaintiff's motion for summary judgment is due to be DENIED and that Defendants' motion for summary judgment is due to be GRANTED.

## I. BACKGROUND[2]

Plaintiff claims that advertisements appearing in the July, August, September, October, and November 2000 issues of Stitches Magazine, a textile trade periodical published by Defendants, infringed upon a trademark and several copyrighted works Plaintiff had previously registered in connection with her marketing of "prewound" plastic bobbins of thread used with sewing machines.[3] The allegedly infringing advertisements, which are substantially identical to each other, tout prewound plastic bobbins sold by Hamlet's, Inc. ("Hamlet's") under the trade name

---

motion and a brief on or before the dispositive motion deadline. Id. On July 25, 2001, Plaintiff filed what is styled as an "Amended Brief Supporting Plaintiff's Motion for Summary Judgment by Plaintiff." Doc. 27. However, because the Court's order of June 28 struck both Plaintiff's motion and her brief, there is not any formal motion on file by Plaintiff seeking summary judgment. Nonetheless, the Court will treat Plaintiff's amended brief as a motion for summary judgment.

[2]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[3]The typical sewing machine operates with a spool of thread located on the machine above the fabric being sewn with a bobbin of the same thread on the bottom of the machine and below the fabric. To use the machine, the operator winds a length of thread from the spool onto the bobbin, which is then placed in the machine below the fabric to be sewed. In contrast, pre-wound or ready-wound bobbins already have thread on them, thus eliminating the need to take the thread from the spool and wind it around the bobbin.

"National Embroidery Bobbin," or "NEB." Hamlet's formerly had a distribution contract with Plaintiff's company that manufactures and sells plastic bobbins, Sew Fast Products, Inc. ("Sew Fast"). However, that relationship ended in litigation with Hamlet's obtaining a judgment against both Sew Fast and Plaintiff personally in the amount of $70,034.53, as well as final writ of seizure that entitled Hamlet's to take possession of much of the property owned by Sew Fast and Plaintiff for use in the manufacturing of prewound bobbins. Sew Fast and Hamlet's both now appear to be competing sellers in the prewound plastic bobbin market.

Each allegedly infringing advertisement in question is one-quarter-page in size with a graphic "NEB" at the top left with "National Embroidery Bobbin" superimposed in darker lettering over top of the three-letter acronym. To the right of this graphic is the phrase, "The 'Plastic Sided Bobbin.' " Thereunder appears the following text:

**Benefits:**

Parallel wind for smoother running and more consistent tension
More usable yards per gross; less waste
More yards means less down time, more production
No fuzz, lint, or wax buildup like paper bobbins
No distorted flanges from humidity or oiling
No jerks or jamming from distorted flanges
Available in 'L' or 'M' style
Competitively Priced

Below this list are the names of various dealers from which "NEB Bobbins and other Fine Products" might be purchased. See Exhibits C-1 through C-4 to Plaintiff's Complaint & Plaintiff's Exhibit C-5.

The copyrighted works that Plaintiff claims have been infringed by the above-described NEB advertisements in this action are three. In 1999 and 2000,

Plaintiff submitted to the United States Copyright Office (1) a one-page advertising circular directed at dealer outlets, see Exhibit A-1 to the Complaint; (2) a one-page advertising circular directed at retail consumers, see Exhibit A-2 to the Complaint; and (3) several product packaging labels, see Exhibit A-3 to the Complaint. Each of these works, which Plaintiff's registration applications state were first published in 1989, is associated with the promotion and marketing of Plaintiff's prewound plastic bobbins, which she named "bobbets." The circulars and the labels contain various graphic drawings and/or designs along with text describing numerous ostensible advantages of Plaintiff's product. None of the three works, however, resembles the NEB advertisements in terms of overall concept, layout, or appearance. While NEB's advertisements are flat, basic, and informational in nature, the layout and drawings of Plaintiff's circulars, in particular, lend to them an anachronistic, late 1950's, "Donna Reed" feel that might be taken for kitsch.[4] Plaintiff's copyright claims focus, rather, exclusively upon the presence of a number of specific phrases in portions of the text of her circulars and labels that are either identical or very similar to phrases that also appear in the NEB advertisements published in Defendants' magazine. Those phrases in Plaintiff's works are:

> 'Parallel Wind' will always give smooth, trouble-free stitching
> 'No fuzz or lint-wax buildup' in bobbin case
> 'No jerks or jamming from distorted flanges'
> 'No distorted flanges due to humidity or oiling'

---

[4] It may be that this is the case because Plaintiff made what was an ultimately unsuccessful attempt at marketing her "bobbets" in the late 1950's and early 1960's, and she appears to have simply resurrected portions of her old promotional materials.

'More thread, less down time, more production, more profit'[5]

Exhibits A-1, A-2, and A-3 to the Complaint (footnote added). See also Plaintiff's Exhibit D.

Plaintiff also claims that the publication of the NEB advertisements renders Defendants liable for infringing upon a trademark for the term "Parallel Wind," for which Plaintiff filed a registration application with the United States Patent and Trademark Office ("PTO") on February 15, 2000. See Exhibit B to the Complaint and Plaintiff's Exhibit E. The record indicates that the term "Parallel Wind" describes the way that thread is wound around the bobbin; that is, the threads on Plaintiff's bobbins, like those on NEB's, are wound lying "parallel" or straight next to each other, as on a spool of thread. Such is also sometimes referred to as "precision wind" in the textile trade. This technique is contrasted with what is called a "cross wind" or "universal wind," in which the thread is wound using a criss-cross pattern.

## II. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex

---

[5]This particular statement appears in Plaintiff's dealer circular and on Plaintiff's product box top label, see Plaintiff's Exhibits A-1 and A-3, but not on Plaintiff's circular aimed at consumers, Id. at A-2. The other four phrases appear in all three works.

Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Celotex, at 323. To do so, it is not enough for a movant to state merely that the non-movant cannot prove his claim; the movant must, rather, refer the Court to that portion of the record evidence that either negates an essential element of the non-movant's claim or that affirmatively shows that there is an absence of evidence such that the non-movant will be unable to meet his burden of proof as to an element of his claim. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). However, once the moving party has satisfied its initial burden, in order to avoid the entry of summary judgment, the non-movant must present evidence "set[ting] forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e). Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 840 (11th Cir. 2000). In determining whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p.299).

## III. CONTENTIONS & ANALYSIS

Plaintiff claims that she is entitled to summary judgment on her copyright and trademark infringement claims against Defendants. In support of her copyright claims, Plaintiff points to the words and phrases that appear in the works that she registered with the United States Copyright Office in 1999 and 2000, and she compares them with the identical and similar words and phrases that appear in the NEB advertisements published in the July-November 2000 issues of Stitches Magazine. For ease of comparison, the Court again sets out the text of Plaintiff's phrases she claims are protected by copyright along with the allegedly infringing text in the NEB advertisements:

**Plaintiff's Text:**

Parallel Wind will always give smooth, trouble-free stitching
No fuzz or lint-wax buildup in bobbin case
No jerks or jamming from distorted flanges
No distorted flanges due to humidity or oiling
More thread, less down time, more production, more profit

**NEB Text:**
Parallel wind for smoother running and more consistent tension
No fuzz, lint, or wax buildup like paper bobbins
No distorted flanges from humidity or oiling
No jerks or jamming from distorted flanges
More yards means less down time, more production

Plaintiff's argument is quite simple in its form: Hamlet's advertisements for NEB bobbins copy phrases appearing in Plaintiff's copyrighted works; such copying constitutes infringement of her copyrights; and Defendants have also infringed because they published the advertisements allegedly knowing that they violated her copyrights. Her trademark infringement claims, for which she also asserts

entitlement to summary judgment, are equally straightforward: She allegedly filed a trademark registration with the PTO for the words "Parallel Wind," and the subsequent appearance of those words in NEB's advertisements constitute infringement for which Defendants are also liable.

Defendants contend, on the other hand, that they are entitled to summary judgment on all of Plaintiff's claims for a variety of reasons. In particular, Defendants argue that Plaintiff is barred by the doctrines of res judicata, collateral estoppel, and/or judicial estoppel from pursuing any of her claims. However, while these defenses may very well have merit,[6] the Court finds that Plaintiff's claims in this action may be resolved most directly and expeditiously by examining the parties' arguments on the merits of Plaintiff's copyright and trademark infringement claims.

### A. Copyright Infringement

In order to prevail on a claim of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Defendants do not appear to dispute at this point that Plaintiff's advertising circulars and labels she registered in 1999 and 2000 are, each standing as a whole, subject to a valid copyright owned by Plaintiff. Thus, the first element is not at issue with regard to Defendant's motion. As to the second element, Defendants appear willing to assume further that the phrases in question

---

[6]Of course, a trial court's final judgment may be affirmed on appeal if it is correct for any reason, even where the stated ground for the decision is superfluous or erroneous. Harris v. Luckey, 918 F.2d 888, 890 n.5 (11th Cir. 1990). See also Jaffke v. Dunham, 352 U.S. 280, 281 (1957) ("A successful party in the District Court may sustain its judgment on any ground that finds support in the record.")

that appear in the NEB advertisements are identical or substantially similar to, and were copied from, Plaintiff's protected works. However, contrary to Plaintiff's suggestion, copying portions of text from works that, as a whole, may be protected by a valid copyright does not necessarily establish liability for infringement, even if the portions copied are substantial. See Feist, 499 U.S. at 361-64 (holding that although it was not disputed that the plaintiff's yellow pages telephone book, as a whole, was subject to a valid copyright, the defendant was not liable for infringement based upon its admitted copying of 1,309 listings from plaintiff's work, because such listings constituted uncopyrightable facts). That is because in order for an infringement claim to lie, the copying must be of "constituent elements" of the plaintiff's work that are themselves "original" and thus subject to copyright protection. Id.

"The sine qua non of copyright is originality . . . that it possesses at least some minimal degree of creativity." Feist, 499 U.S. at 345. "It is axiomatic that copyright law denies protection to 'fragmentary words and phrases' and to 'forms of expression dictated solely at functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1519 (1st Cir. 1996) (quoting 1 Nimmer on Copyright, 2.01[B], at 2-13-18). Similarly, "[c]liched language, phrases and expressions conveying an idea that is typically expressed in a limited number of stereotypic fashions, [sic] are not subject to copyright protection." Id. at 1520 (quoting Perma Greetings, Inc. v. Russ Berrie & Co., Inc., 598 F.Supp. 445, 448 (E.D. Mo. 1984)). Thus, even though an advertisement or product label as a whole may be subject to copyright, not all of

its constituent elements will necessarily be deemed sufficiently original so as to be protected. As stated in Kitchens of Sara Lee, Inc. v. Nifty Foods Corp., 266 F.2d 541, 544 (2nd Cir. 1959), "Not every commercial label is copyrightable; it must contain an appreciable amount of original text or pictorial material. Brand names, trade names, slogans, and other short phrases or expressions cannot be copyrighted, even if they are distinctly arranged or printed." (Internal quotation marks omitted). Further, where the text of a label or advertisement is merely descriptive matter that does not aid or augment the pictorial illustration, it is not subject to copyright. See Alberto-Culver Company v. Andrea Dumon, Inc., 466 F.2d 705, 710-11 (7th Cir. 1972); Robarb, Inc. v. Pool Builders Supply of the Carolinas, Inc., 696 F.Supp. 621, 629 (N.D. Ga. 1988). See also Sassafras Enters., Inc. v. Roschco, Inc., 889 F.Supp. 343, 345 (N.D. Ill. 1995) ("[L]anguage describing what a product does and how it is used is generally noncopyrightable").

There are numerous cases illustrating the foregoing principles. For example, in Alberto-Culver, then Judge, now Justice, Stevens wrote for the Seventh Circuit Court of Appeals that all of the following phrases on the plaintiff's label were merely descriptive of the product and thus could not have been infringed by similar phrasing on the label of defendant's competing product:

> FDS is the most personal sort of deodorant.
> This unique spray is made expressly for the external vaginal area.
> FDS protection is dry, refreshing and gentle to delicate tissues.
> Use FDS regularly to remove any fear of odor.

See 466 F.2d at 710-11 & n.2. Likewise, in CMM the First Circuit Court of Appeals held that the phraseology employed in the plaintiff's promotional materials relating to radio contests, "if you're still 'on the clock' at quitting time," "clock in and make

$50 an hour," "call in, clock in, and win," were uncopyrightable slogans, cliches, and functional language describing how the contests work. See 97 F.3d at 1520. District court opinions contain further illustrations. In S.A.M. Electronics, Inc. v. Osaraprasop, 39 F.Supp. 2d 1074 (N.D. Ill. 1999), the court held that a bulleted list of potential uses on header card labels used by a distributor in packaging toy frogs, which suggested that the toys might be used as an "Area Security Alarm," "Refrigerator Diet Reminder," "Companion to Your Pet or Dog," "Retail Store Greeting," or a "Deskmate," was not protectable expression and could not provide the basis for a claim of copyright infringement, despite the similarity to a bulleted list of potential uses on the defendant's toy frogs. See 39 F.Supp. 2d at 1082 & n.4. Also, in Laskowitz v. Marie Designer, Inc., 119 F.Supp. 541, 552 (S.D. Cal. 1954), the court opined that phrases such as "This is Nature's most restful posture" and phrases emphasizing "the relaxing" qualities of the plaintiff's reclining chair were so purely descriptive of the product that they did not comply even with the slight requirement of originality in the law of copyright as applied to advertisements. For other examples see Takeall v. Pepsico, Inc., 14 F.3d 596 (table), 1993 WL 509876, **8 (4th Cir. 1993) (holding that the phrase "You Got the Right One, Uh-Huh" fails to evince the requisite degree of originality to entitle it to copyright protection); Sweet v. City of Chicago, 953 F.Supp. 225, 229 (N.D. Ill. 1996) (the plaintiffs' title "Eat Your Art Out, Chicago" is not protected by copyright); Johnson v. Automotive Ventures, Inc., 890 F.Supp. 507, 511-12 (W.D. Va. 1995) (holding that the phrase "test market pricing" in an advertisement was a concept presented by short, ordinary phrase and was not entitled to copyright protection).

In the instant case, Plaintiff's copyright infringement claims are based solely

upon five phrases that are among the constituent elements of her circulars and label. The Court concludes, however, that the phrases in question lack the requisite degree of originality and are thus not themselves subject to copyright protection. The first two words of the phrase "Parallel Wind will always give smooth, trouble-free stitching" are purely descriptive, stating the manner in which the threads are wound on the bobbin and distinguishing the product from "cross-wound" bobbins, while the remainder of the language constitutes a mere slogan or cliche. Similarly, the phrases "No fuzz or lint-wax buildup in bobbin case," "No jerks or jamming from distorted flanges," and "No distorted flanges due to humidity or oiling," are brief, slogan-esque descriptive statements of functional aspects of the product itself, relating to how plastic bobbins generally are superior to paper-flanged bobbins. Finally, the phrase "More thread, less down time, more production, more profit" is entirely a slogan or cliche. Because none of the five phrases in question are themselves subject to copyright protection under the applicable law, Defendants are entitled to summary judgment on Plaintiff's claims alleging copyright infringement.

### B. Trademark Infringement

A trademark is defined in 15 U.S.C. § 1127 as including "any word, name, symbol, or device or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." In a trademark infringement action, the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1216 (11th Cir. 2000); Dieter v. B & H Industries of Southwest Florida, Inc., 880 F.2d 322, 326

(11th Cir. 1989). Defendants argue that Plaintiff's trademark in the term "Parallel Wind" is invalid and unenforceable because it is merely descriptive of a feature of Plaintiff's product and lacks secondary meaning. The Court agrees.

As a threshold matter, the Court notes that, in terms of proving the validity of her trademark, Plaintiff relies heavily upon the fact that she filed a registration application with the PTO in February 2000. And Plaintiff seems to believe, based upon correspondence mailed to her by the PTO on July 18, 2000, Plaintiff's Exhibit E, that her trademark application was accepted, as she refers to that Exhibit as the "The 2000 Trademark acceptance." See "Plaintiff's Reply to Defendant's Motion for Summary Judgment" (Doc. 32) at 1. However, Plaintiff's Exhibit E does <u>not</u> support that the PTO actually accepted Plaintiff's application for inclusion on the principal register. It shows, rather, that after receiving Plaintiff's registration application the PTO communicated to Plaintiff that her application was flawed because her "identification of goods" was unacceptable and that she had to file a response within six months in order to avoid her application being deemed abandoned. See Plaintiff's Exhibit E. There is no evidence indicating that Plaintiff thereafter filed any response to the PTO's notice. Accordingly, it appears that Plaintiff's mark, "Parallel Wind," is not registered. But even if Plaintiff's mark was properly registered, under the Lanham Act, "registration of a trademark confers only procedural advantages and does not enlarge the registrant's rights, for ownership of the trademark rests on adoption and use, not on registration." <u>University of Georgia Athletic Ass'n v. Laite</u>, 756 F.2d 1535, 1541 (11th Cir. 1985) (quoting <u>Turner v. HMH Publishing Co.</u>, 380 F.2d 224, 228 (5th Cir. 1967)). However, even if a trademark is not registered, it still may be the subject of an

infringement action under § 43(a) of the Lanham Act. See <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 768 (1992).

"The primary indicator of trademark strength measures the logical correlation between a name and a product. If a seller of a product or service would naturally use a particular name, it is weakly protected." <u>Freedom Sav. and Loan Ass'n v. Way</u>, 757 F.2d 1176, 1182 (11th Cir. 1985). "Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. See <u>Abercrombie & Fitch Co. v. Hunting World, Inc.</u>, 537 F.2d 4, 9 (CA2 1976)." <u>Two Pesos</u>, 505 U.S. at 768. "Although meant as pigeon-holes, these useful labels are instead central tones in a spectrum; they tend to merge at their edges and are frequently difficult to apply. <u>Soweco, Inc. v. Shell Oil Co.</u>, 617 F.2d 1178, 1183 (5th Cir. 1980)[7]. "Generic marks are the weakest and not entitled to protection--they refer to a class of which an individual service is a member (<u>e.g.</u>, 'liquor store' used in connection with the sale of liquor)." <u>Frehling Enterprises, Inc. v. International Select Group, Inc.</u>, 192 F.3d 1330, 1335 (11th Cir. 1999). "A descriptive mark describes a characteristic or quality of the product or service, such as its intended use, its ingredients, its dimensions, its desirable features, or its end effect on the consumer." <u>John H. Harland Co. v. Clarke Checks, Inc.</u>, 711 F.2d 966, 974 (11th Cir. 1983). For example, the term "Vision Center," when used to describe a place to purchase eyeglasses, would be a descriptive name. See <u>Vision Center v. Opticks, Inc.</u>, 596 F.2d 111 (5th Cir. 1979). However, marks that

---

[7]All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

are merely descriptive of a product do not inherently identify a particular source, and thus cannot be registered or protected absent proof of "secondary meaning." See Two Pesos, 505 U.S. at 769. "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 851, n. 11 (1982). "Suggestive marks subtly connote something about the service [or product] so that a customer could use his or her imagination and determine the nature of the service. The term 'Penguin' would be suggestive of refrigerators." Freedom Sav. and Loan Ass'n, 757 F.2d at 1182 n.5. "An arbitrary mark is a word or phrase that bears no relationship to the product (e.g., 'Sun Bank' is arbitrary when applied to banking services). Frehling Enterprises, 192 F.3d at 1335. " 'Fanciful' marks consist of 'coined' words that have been invented or selected for the sole purpose of functioning as a trademark." King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1093 (10th Cir. 1999) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:5 (4th ed. 1996)). See also Genesee Brewing Co., Inc. v. Stroh Brewing Co., 124 F.3d 137, 143 (5th Cir. 1999) ("[T]he term 'fanciful', as a classifying concept, is usually applied to words invented solely for their use as trademarks. When the same legal consequences attach to a common word, i.e., when it is applied in an unfamiliar way, the use is called 'arbitrary' " (citing Abercrombie & Fitch, 537 F.2d at 11 n. 12). Thus, the names "Kodak" and "Xerox" are examples of marks that are "fanciful," see Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 260 (5th Cir.

1980), at least as this Court employs that designation.[8] Unlike descriptive marks, which require proof of secondary meaning, marks that are classified as suggestive, arbitrary, or fanciful are deemed inherently distinctive and are entitled to protection because their intrinsic nature serves to identify a particular source of a product. Two Pesos, 505 U.S. at 769.

Plaintiff seems to argue that her use of the term "Parallel Wind" is suggestive and thus subject to trademark protection without evidence of secondary meaning. See Plaintiff's Reply to Defendants Motion for Summary Judgment at 10. The Court disagrees. It is abundantly clear that Plaintiff's use of the term is purely descriptive of an aspect or feature of her product: it indicates that the threads on the bobbin have been wound lying straight next to each other in "parallel," as opposed to "cross-wound" bobbins where the threads are wound in a cris-cross fashion and the thread is fed over the end of the bobbin. Because Plaintiff's use of the term is merely descriptive, she would have to produce evidence of secondary

---

[8]The Court recognizes that the Eleventh Circuit Court of Appeals has articulated the categories of trademarks in several different ways. In some cases, that court has stated that there are only four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary. See, e.g., Frehling Enterprises, 192 F.3d at 1335; AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1537 (11th Cir. 1986). In other cases, these same four categories are employed, but the last category is expressly said to encompass all types of marks that bear no relationship to the product itself, which the court has indicated includes "fanciful" marks. See, e.g., Dieter v. B & H Industries of Southwest Florida, Inc., 880 F.2d 322, 327 (11th Cir. 1989). In another case, the court seems to suggest that "arbitrary" and "fanciful"marks are in one category and are essentially synonymous, meaning that the mark bears no relation to the product, while a fifth category is added for "coined" marks, i.e., "a word invented in order to identify the product or service, such as Kodak or Xerox." See, e.g., Freedom Sav. and Loan Ass'n, 757 F.2d at 1182 & n.5. While perhaps reflecting a disparity of opinion with regard to what is the proper definition of "fanciful" as a term of art, this Court does not believe that the varying category formulations suggest that there is any substantial conflict as to what are the appropriate legal principles to be applied. Certainly the differing articulations are not significant in the instant case, given that there is no question that Plaintiff's mark, "Parallel Wind," as applied to her prewound plastic bobbin, is neither "arbitrary," "fanciful," nor "coined."

meaning in order to prevail on her trademark infringement claim. And while Plaintiff has sporadically attempted to market and sell her prewound plastic bobbins since the 1950's, there is absolutely no evidence in the record indicating that the term "parallel wind" has come to be associated with Plaintiff's product specifically in the mind of the public. Indeed, Defendants have produced evidence indicating that the term is and has been used elsewhere in the textile industry to distinguish generally between threads wound in a parallel fashion from those that have been cross-wound. See Attachments to Hamlet Affidavit. Because the record shows that Plaintiff's use of the term is descriptive and that it does not have the requisite secondary meaning, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's claim alleging trademark infringement.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff's motion for summary judgment (Doc. 27) is due to be **DENIED** and that Defendants' motion for summary judgment (Doc. 28) is due to be **GRANTED**. The Court has determined that the record reveals that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law on Plaintiff's claims alleging copyright and trademark infringement. Accordingly, this action will be **DISMISSED** with prejudice. A separate order will be entered.

**IT IS SO ORDERED**, this 25th day of September, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE